**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL REINFORCING AND ORNAMENTAL IRON WORKERS, LOCAL 75, AFL–CIO, Respondent.**

**No. 77–4015.**

United States Court of Appeals, Ninth Circuit.

Oct. 12, 1978.

---

Edward S. Dorsey (argued), Elliott Moore, Washington, D.C., for petitioner.

Gerald W. Alston (argued), Alston, Edwards, Scott & Novak, Phoenix, Ariz., for respondent.

Before MERRILL and CHOY, Circuit Judges, and TANNER,* District Judge.

MERRILL, Circuit Judge:

The National Labor Relations Board petitions for enforcement of its order published

at 232 N.L.R.B. No. 178 (1977), holding that respondent Local 75 committed an unfair labor practice in violation of § 8(b)(1)(A) and (b)(2) of the National Labor Relations Act, 29 U.S.C. § 158(b)(1)(A) and (b)(2).[1]

Under its collective bargaining agreement with numerous Arizona construction companies (the Arizona Master Labor Agreement, effective from August 1, 1974, through July 31, 1977), Local 75 operated an exclusive hiring hall for the placement of employees on construction projects and maintained an out-of-work or priority list of ironworkers for this purpose. The unfair labor practice charge was brought by an ironworker, Richard M. Franko, and asserted a refusal of Local 75 to refer him to a job when he had been requested by name by the employer, Tyler Reinforcing. The main issue before us is whether the refusal to refer Franko was an unfair labor practice.

Del E. Webb Corporation (Webb) was the general contractor on a construction project of Ina Road Water Pollution Control located near Tucson, Arizona, and within Local 75's jurisdiction. A subcontract on the job was let to Livermore Rebar, Inc. (Livermore). Livermore had a collective bargaining contract with Local 75's international union, but not with the local. Under the international contract Livermore was entitled to employ through Local 75's hiring hall ironworkers of its own choosing regardless of their placement on the hall's out-of-work list.

Webb had a contract with Local 75 but none with the international. Under the terms of the local contract, requests for ironworkers made to the hiring hall would be filled from the top of the out-of-work list, save that requests for workers by name would be honored if the workers qualified as "Group A" workers, that is, journeymen

* Honorable Jack E. Tanner, United States District Judge of the Western District of Washington, sitting by designation.

1. The sections in brief provide that it shall be an unfair labor practice for a labor organization or its agents to restrain or coerce employ-ees in the exercise of their rights of self-organization and collective bargaining; or to discriminate against employees on the basis of union membership; or to cause or attempt to cause an employer to discriminate against an employee.

who had worked in the trade within Local 75's jurisdiction for four years. "Group B" workers, journeymen without the four-year qualification, could not be requested by name under the terms of Local 75's contract. Livermore, as a contractor with the international was not subject to the Group A limitation.

Livermore encountered financial difficulties and was forced to withdraw from the project on or about October 4, 1976. Since it would take time to secure a new contractor, and it was not feasible to discontinue the work with which the subcontract dealt, Webb resorted to the extraordinary expedient of undertaking the work itself, retaining the Livermore crew intact and meeting the payroll.

· Franko was a member of Local 75's sister union in Los Angeles. He was a Group B worker who had been requested by name by Livermore pursuant to its right under its contract with the international union. Franko was kept on the job by Webb as a member of the Livermore crew retained by Webb.

By November 5, 1976, a new subcontractor had been secured, Tyler Reinforcing (Tyler). On that date Webb formally terminated the employment of the former Livermore crew and their names were placed on the hiring hall's out-of-work list. While during this thirty-day period Webb had simply retained the Livermore crew intact and had not secured it by referral from the hiring hall, on November 1 Local 75 went through the formality of issuing slips to the crew predated to October 4 referring them to Webb. Local 75's business agent explained that this was to assure that the workers "got their fringe benefits," and that Webb would assume responsibility for them.

Tyler, the new subcontractor, like Webb, had a local rather than international contract. On November 8 Tyler requested the hiring hall to refer Franko. The hall refused, giving as its reason that Franko was Group B.

Under Livermore, and later under Webb, Franko had had disputes with Local 75's steward. When the crew was terminated by Webb, Franko was given the responsibility of passing out the termination slips. He terminated the steward a few hours in advance of the other crew members. Some Local 75 officials regarded this as an act of humiliation serving to undermine the position of the union steward. Hard words passed and Franko was threatened with physical harm. In filing his unfair labor practice charge against Local 75, Franko attributed its refusal to refer him to union animosity and claimed that the union's reliance upon its contract provisions was pretextual.

The Administrative Law Judge rejected this. He noted that aside from the Webb referrals, "There is no evidence of a single instance in which respondent has ignored the contract * * *." He distinguished the Webb referrals as of "a temporary and emergency nature." "Moreover," he noted, "there had been no formal termination before the Webb takeover."

The Board disagreed. It stated:

"It is true that Respondent was not contractually required to refer Franko for employment with Tyler. If Respondent merely seized upon the contract as a pretext, however, and it was really motivated by its belief that Franko had undermined the position of Respondent's steward, then a violation of the Act resulted."

232 N.L.R.B. No. 178 at 3. And, further: "Respondent, moreover, apparently waived application of the contract's referral provisions by issuing referrals to the entire Livermore crew, including Franko, for employment with Webb. Respondent's disparate application of the contract to Franko belies Respondent's reliance on the contract as a defense and reinforces our conclusion of the presence of Respondent's unlawful motive."

232 N.L.R.B. No. 178 at 6. In our judgment the Administrative Law Judge was right upon the law and the Board was wrong.

The Board cites much authority holding that a union violates § 8(b)(1)(A) and (b)(2) if it refuses to refer an employee based on "arbitrary" or "irrelevant" grounds. From this, the Board then argues in brief that "a

*fortiori*, any such action would violate Section 8(b)(2) and (1)(A) if the Union acted out of animus toward the employee. *N.L. R.B. v. International Longshoremen's and Warehousemen's Union and Local 27, I.L. W.U.*, 514 F.2d 481, 483 (C.A. 9, 1975) * *; *N.L.R.B. v. Hod Carriers and Construction Laborers Union, Local No. 300*, 392 F.2d 581, 582 (C.A. 9, 1975) * * *; *Lummus Company v. N.L.R.B.*, 339 F.2d 728, 733–34 (C.A.D.C., 1964) * * *."

Reliance on this and similar authority is misplaced, however. In these cited cases, the action of the union (or the employer at the behest of the union) was discretionary action and, being based on improper motive, was an improper exercise of discretion.

■ Here we are not faced with an exercise of discretion. The contract provisions respecting Group A and Group B were more than rights of Local 75 which it could waive at its discretion. Local 75 had not entered into these provisions of the hiring hall contract on its own behalf. It was acting in a representative capacity on behalf of all the workers on its out-of-work list—both Group A and Group B. By the terms of the contract Group A workers were given a clearly defined advantage over those in Group B, and no question is raised as to the validity of such an advantage. "Waiver" of those contract terms by Local 75 could properly be regarded by those in Group A as a contract violation—a violation of a duty contractually assumed by Local 75 on their behalf. We here hold as matter of law that respect by Local 75 for the nondiscretionary referral process it was required to follow by its collective bargaining agreement cannot be held to be an unfair labor practice; nor is it subject to an examination of motive to ascertain whether it was pretextual. That its relations with Franko were such as to render its dutiful performance a happy one cannot change the fact that it did what it was contractually required to do.

■ Its referral of the Livermore crew to Webb cannot affect this result. As the Administrative Law Judge noted, the Webb takeover was temporary, emergent and ex-

traordinary. Further, Local 75's referral to Webb of the crew came well after the fact, when it was too late to provide the Group A advantage and when other rights of the workers were in jeopardy. The question whether Local 75's action under the circumstances rendered it liable for a contract violation is not before us. What is clear is that even if the union's action in that extraordinary situation did amount to a violation of its contract, that violation cannot justify requiring the union to repeat its violation in another case.[2]

The Board's petition will not be enforced.

---

**2.** We note that here the risk of liability was one Local 75 might responsibly have chosen to take in light of its purpose to protect those it represented in enjoyment of their fringe benefits.